

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN RE: | § | No. 08-23-00319-CV |
| HARLEY DAVID BELEW, | § | Appeal from the |
| Appellant. | § | 198th Judicial District Court |
| | § | of Kerr County, Texas |
| | § | (TC# 23-306-B) |

## MEMORANDUM OPINION

Under Texas law, a person convicted of a felony is not eligible to hold public office.[1] That provision is in play in this quo warranto case where the State of Texas successfully sued to remove Appellant Harley David Belew from his elected office—Kerr County Commissioner Precinct One—based on an alleged 1973 felony conviction. The parties filed competing motions for summary judgment that mainly join issue on whether a guilty plea that Belew entered in 1973 qualifies as a conviction, and whether the probation he successfully served negates any finding of a final conviction. The State relies on the express wording of public court records from 1973. Belew relies on his recollection of what his now deceased attorney told him, an affidavit from a criminal defense attorney who practiced in that era, and claimed inconsistency in the court

---

[1] TEX. ELEC. CODE ANN. § 141.001(a)(4) (to be eligible for elected office, a person must "have not been finally convicted of a felony"); *see also* TEX. CONST. art. XVI, § 2 ("Laws shall be made to exclude from office persons who have been convicted of bribery, perjury, forgery, or other high crimes.").

documents. Notwithstanding Belew's proofs, and the uncontroverted assertion that he has maintained a spotless record since then (which we accept as true), we affirm the trial court's judgment removing him from office.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1973, Belew—then 17 years old—pled guilty to a felony charge of burglary. While Belew contends he was not convicted, he does not dispute that he was given a suspended sentence and placed on probation for 10 years. Instead, he contends that he pleaded guilty under a Tarrant County procedure that emulates present day community supervision deferred adjudication. While that claim is disputed, the State does not deny that Belew completed his probation, which was administratively closed.

Fast forward in time to 2016 when voters elected Belew as Kerr County Commissioner, Precinct One, and he took office on January 1, 2017. He was re-elected for a second term, starting on January 1, 2021. In 2023, the State filed a quo warranto suit seeking to remove Belew from his elected office. The sole ground for removal was that Belew's 1973 criminal case resulted in a felony conviction. Along with filing an answer, Belew counterclaimed seeking a declaratory judgment that: (a) "clear and convincing" evidence is required to remove an elected official from office; and (b) his 1973 criminal case did not result in a felony conviction for purposes of the quo warranto statute, Chapter 66 of the Texas Civil Practice & Remedies Code.

Both parties filed motions for summary judgment with attached evidence that frames the dispute.

### A. The State's Traditional Motion for Summary Judgment

The State filed a traditional motion, asserting that the documents from Belew's 1973 criminal case conclusively establish that he was convicted of a felony, thereby disqualifying him

2

from elected office. The State attached to its motion certified copies of documents from the 1973 criminal case, including: the Indictment; Judgment on Plea of Guilty and Suspending Imposition of the Sentence (1973 Judgment); Waiver of Jury Trial and Agreement to Stipulate Oral Testimony; Waiver of Right to Appeal—Probated Sentence (Waiver of Appeal); Application for Probated Sentence; and Conditions of Probation. Two of these documents—the 1973 Judgment and Waiver of Appeal—are central to the parties' arguments.

**(1)   The 1973 Judgment**

The 1973 Judgment is a pre-printed form with typewritten inserts. Its single page includes two separately styled and captioned sections, the first entitled "Judgment on Plea of Guilty" and the second "Order—Placing Defendant on Probation and Suspending Imposition of Sentence."

The "Judgment on Plea of Guilty," after setting out typical admonishments for guilty pleas, concludes as follows:

> IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED, and DECREED by the Court that said Defendant is guilty of the felony offense of Burglary . . . and that he be confined in the Texas Department of Corrections for Ten (10) years . . . . And it is further Ordered by the Court that the imposition of Sentence of the Judgment of conviction herein shall be suspended and that the Defendant placed on probation during the period of time fixed by the Court, under the conditions to be determined by the Court, as provided by law.

The second part of the document—"Order—Placing Defendant on Probation and Suspending Imposition of Sentence"—sets forth the facts necessary to "place Defendant on probation in this cause, under the Judgment heretofore entered" and concludes as follows:

> It is therefore, ordered, adjudged and decreed by the Court that the imposition of sentence herein be and the same is hereby suspended and that the Defendant be and is hereby placed upon probation for the period of Ten (10) years, as heretofore determined by the Court, upon the following terms and conditions, to-wit . . . .

This language is followed by a list of conditions of probation—Items a through k—the last

3

of which ends with a semi-colon (and not a period).[2] The 1973 Judgment does not contain a signature line for the judge, counsel for either party, or the defendant. All the documents from the case that the State attached are certified copies by the Tarrant County District Clerk. All the documents also have file stamps showing when they were filed—except the 1973 Judgment, which does not have a file stamp.

The 1973 Judgment also contains the following preprinted language: "The Clerk of this Court will furnish the Defendant a Certified copy of this Order, and shall note on the Docket Sheet the date of delivery of such Order." The Docket Sheet does not contain such a notation.

### (2) The Waiver of Appeal

The Waiver of Appeal begins: "I, Harley David Belew, defendant . . . having been convicted of the offense of Burglary and having been given a Probated Sentence therein, . . . hereby expressly state as a fact that I have been fully informed by the Judge of this Court, and by my attorney, and I know, that I have the legal right of appeal from the conviction." The Waiver concludes: "With full understanding of the above, I hereby, in open Court, state that I do not desire to appeal and expressly waive my appeal in this case." The Waiver is signed by Belew. It is also signed by his counsel under the affirmation: "Approved by me as the attorney representing the defendant and I am present at the time of sentencing and of this waiver."

### B. Belew's Summary Judgment Motion

Belew filed a traditional motion, asking the trial court to declare: (1) that the standard of proof for removal from office is "clear and convincing evidence"; and (2) that under a strict

---

[2] Nothing follows the semi-colon. That is, the page ends like this:

k.___;

The same list of conditions, also ending with a semi-colon, is also found in the separate one-page document entitled Conditions of Probation. However, unlike the Judgement, this separate document has additional language at the bottom of the page and signature lines for the defendant, probation officer, and deputy district clerk.

scrutiny standard, the 1973 judgment does not meet the requirements of a final conviction. Belew also filed a response to the State's motion for summary judgment that incorporated by reference the evidence he attached to his own motion. We summarize that evidence as follows:

Belew submitted his own affidavit, which stated that "I understood from Mr. Coffey [Belew's now deceased defense attorney in the 1973 criminal case] that in exchange for a plea of guilty to one of the offenses and upon my completion of ten years of supervision the charges would be dismissed and not result in a felony conviction," and "[Mr. Coffey's] advice to me that should I complete probation I would not have a felony conviction was assurance enough to me that this was in fact accurate."

Belew also submitted a declaration by attorney Trey E. Loftin, which stated that:

I am aware that historically before the implementation of deferred adjudication and other mechanisms such as pre-trial diversion, and ultimately Tarrant County's "Deferred Prosecution Program," Tim Curry, the Tarrant County District Attorney, worked with or even created a process for predominantly young or first-time offenders wherein the offender would be placed on supervision and upon the successful completion, the offender would often be released without a criminal conviction. This process was commonly referred to as a "memorandum of agreement."

.      .      .

I know nothing about the specifics of Mr. Belew's prosecution but do know that there was a practice of working cases out in a fashion for young/new offenders in Tarrant County so that they had an opportunity to not be finally convicted if they put in substantial work on supervision. I have no idea of this happened for Mr. Belew or not.

Also attached to both parties' motions were these stipulations: (1) "[Belew] is . . . the same person named [in the 1973 criminal case]"; (2) "the alleged [1973 Judgment] . . . is not a written declaration of the court signed by the trial judge and entered of record showing the conviction of the defendant"; (3) "the alleged [1973 Judgment] . . . does not bear a dated file stamp evidencing the date of its entry of record"; (4) "the alleged [1973 Judgment] . . . does not bear the trial judge's

5

signature"; (5) "there is no evidence that the alleged [1973 Judgment] . . . was delivered to [Belew]"; and (6) "there is no evidence on the Court's docket sheet notating that the alleged [1973 Judgment] . . . was delivered to [Belew]."

Further, Belew challenged the State's evidence, objecting that the 1973 Judgment was hearsay and not properly authenticated, and that the Waiver of Right to Appeal contained a factual and legal conclusion: that Belew was convicted of burglary.

### C. The Trial Court's Ruling.

The trial court called the case for trial on the merits on September 29, 2023. At the outset of the proceeding, the trial court stated that the issue presented is a question of law. After hearing argument, the court granted the State's motion for summary judgment, denied Belew's motion, overruled his objections, and entered a judgment removing Belew from office. The court also denied his request that the judgment be suspended pending appeal. This appeal follows.

## ISSUES ON APPEAL

Belew raises six issues, contending that the trial court erred in: (1) denying his request for a declaration that the burden of proof in a quo warranto proceeding is clear and convincing evidence; (2) denying his request for a declaration that the alleged judgment did not meet the requirements of a final conviction for purpose of a quo warranto proceeding; (3) granting summary judgment removing him from office; (4) overruling his objections to the Waiver of Right to Appeal; (5) overruling his objections to the Judgment; and (6) rendering a void judgment because the assigned trial judge was disqualified from serving as both presiding judge and senior judge in violation of Texas Constitution art. XVI, § 40 and the common law prohibitions against self-appointment and self-employment. Because this last issue implicates our jurisdiction to hear the suit, we start our discussion there.

6

## DISCUSSION

### A. Was Judge Harle's order void?

The State's quo warranto suit was filed in the 198th District Court for Kerr County, the Honorable M. Patrick Maguire presiding. Shortly after the suit was filed, the Presiding Judge for the Sixth Administrative District, Stephen Ables, assigned "the Honorable Sid L. Harle, Senior Judge of the 226th Judicial District Court and Presiding Judge of the Fourth Administrative Judicial Region" to the 198th District Court to preside over this case. That assignment and Judge Harle's participation in the case sparks Belew's sixth issue which claims Judge Harle's orders are void. If so, a void judgment similarly implicates our jurisdiction to hear the merits of the appeal. *See Freedom Communications, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012) (per curiam) ("[A]ppellate courts do not have jurisdiction to address the merits of appeals from void . . . judgments.").

Belew argues that Judge Harle was disqualified to serve as the presiding judge because he was serving as both a presiding judge of an administrative district and as an assigned senior judge. This dual role, according to Belew, creates two problems, one of constitutional dimension, and one derived from the common law. The constitutional argument claims Judge Harle's dual role violates the prohibition against holding two offices of emolument described in the Texas Constitution. TEX. CONST. art. XVI, § 40(a) ("No person shall hold or exercise at the same time, more than one civil office of emolument[.]"). The common-law-based argument claims an official cannot self-appoint themselves to office. Belew asserts that Judge Harle, as the Chief Administrative Judge of the Fourth Judicial District, must have appointed himself as the trial judge to hear the case. Because Belew lodged no objection to Judge Harle below, the distinction between the arguments takes on some significance. We conclude that the common law "self-assignment"

7

argument is waived. As for the constitutional objection, some constitutional challenges to a judge's participation must be preserved through objection, and some may be raised for the first time on appeal. But no case has yet decided into which bucket an emoluments complaint falls. We need not address that thorny question for the simple reason that no emoluments issue is involved here. But first, we need to set out some background.

Kerr County falls within the Sixth Administrative District for Texas.[3] Under the Court Administration Act, the Governor with the advice and consent of the senate, appoints one "presiding judge" in each administrative judicial region of the state. TEX. GOV'T CODE ANN. § 74.005(a). The Honorable Stephen Ables holds that position for the Sixth Administrative District. A presiding judge, such as Judge Ables "may perform the acts necessary to carry out the provisions of this chapter and to improve the management of the court system and the administration of justice." *Id*. § 74.047. One of those functions is the assignment of judges. *Id*. § 74.052. Judges subject to assignment include "a senior judge who has consented to be subject to assignment and who is on the list maintained by the presiding judge under this chapter." *Id*. § 74.054(a)(2). And the presiding judge could even appoint "an active judge or justice of the supreme court, the court of criminal appeals, or a court of appeals who has had trial court experience." *Id*. § 74.054(5).

### (1) The Self-appointment Claim

Belew argues that Judge Harle was disqualified from serving as trial judge because he assigned the case to himself. For this argument, he relies on language from an early Texas Supreme

---

[3] The Judicial Administrative Districts do not correspond to the same districts that define an intermediate appellate court's jurisdiction. Kerr County falls under the Sixth Administrative District, but any appeal from Kerr County must go the Fourth Court of Appeals. This appeal was indeed filed in the Fourth Court of Appeals, but then transferred to this Court pursuant to the Texas Supreme Court's docket equalization authority. By rule, we are to decide the case in accordance with the precedent of the transferor court to the extent it may conflict with our own precedents. *See* TEX. R. APP. P. 41.3.

Court opinion questioning whether a County Judge could appoint himself as an attorney for the County. *Ehlinger v. Clark*, 8 S.W.2d 666, 674 (1928) (noting that "all officers who have the appointing power are disqualified for appointment to the offices to which they may appoint"). Belew's argument has a statutory thread as well. "The presiding judge of one administrative region may request the presiding judge of another administrative region to furnish judges to aid in the disposition of litigation pending in a county in the administrative region of the presiding judge who makes the request." *Id.* § 74.056(b). Belew reasons that Judge Harle, as the Fourth Administrative District Presiding Judge, assigned himself, as a senior judge, to accept the assignment from the Sixth Administrative District. Setting aside whether Judge Harle appointed himself—which is problematic at best—the issue is not preserved for review.[4]

Texas Rule of Appellate Procedure 33.1(a) provides that, in general, "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion." No objection was lodged below to Judge Harle's assignment. No opportunity was afforded Judge Ables to make a different assignment if there were a problem with this assignment. While some acts of constitutionally disqualified judges are void, and can be raised for the first time on appeal, *see Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 148 (Tex. 1982), no similar exception would apply to a statutory or common-law-based claim. We conclude the common law self-appointment argument, whatever its merit, is waived. *See Wilson v. State*, 977 S.W.2d 379, 380 (Tex. Crim. App. 1998)

---

[4] The record contains an "Order of Assignment by the Presiding Judge" of the Sixth Administrative District (Judge Ables) that "assigns the Honorable Sid L. Harle, Senior District Judge of the 226th Judicial District Court and Presiding Judge of the Fourth Administrative Judicial Region of Texas, to the 198th Judicial District Court of Kerr County, Texas." Nothing in that order suggests that Judge Harle appointed himself to hear the case. Further, in a case decided last year, the Texas Court of Criminal Appeals observed that under Texas Government Code § 74.056, presiding administrative judges "ha[ve] the authority to assign [cases] to themselves or another judge." *In re Wice*, 668 S.W.3d 662, 673–74 (Tex. Crim. App. 2023). The Court of Criminal Appeals apparently found such a practice unremarkable, and we have been given no reason to find otherwise.

9

(en banc) ("[A]n appellant may not object, for the first time on appeal, to a procedural irregularity in the assignment of a former judge who is otherwise qualified."); *Lopez v. State*, 57 S.W.3d 625, 629 (Tex. App.—Corpus Christi 2001, pet. ref'd) ("[W]e hold that appellant's failure to complain to Judge Garcia that his assignment had expired caused appellant to forfeit his right to challenge on appeal the judge's authority to preside over his trial.").

### (2) The Constitutional Emolument Claim

Texas Constitution art. XVI, § 40(a) provides, subject to exceptions not relevant here, that "No person shall hold or exercise at the same time, more than one civil office of emolument[.]" Belew argues that Judge Harle's position as a Presiding Judge of the Fourth Administrative District, and the assigned senior judge to the 198th District Court violates the emolument clause. While that argument might stand on somewhat firmer preservation grounds,[5] we conclude it falters on its merits.

Belew argues that by "holding" two offices—senior judge and presiding judge of an administrative judicial region—Judge Harle violated Texas Constitution art. XVI, § 40, which provides that "[n]o person shall hold or exercise at the same time, more than one civil office of emolument." In support of this argument, Belew cites to an opinion of this Court which held that "senior judges are public officers," thus a senior judge must take the oath required of officers under

---

[5] Some failures in a judge's qualifications—even those required by the Texas Constitution—require timely objection. *See Espinosa v. State*, 115 S.W.3d 64 (Tex. App.—San Antonio 2003, no pet.) (requiring objection to visiting judge hearing case who failed to comply with Texas Constitution art. XVI, § 1's oath requirement); *In re Felan*, No. 04-14-00283-CR, 2014 WL 1831116, at *1 (Tex. App.—San Antonio May 7, 2014, no pet.) (mem.op.) (per curiam) (requiring objection to judge who allegedly failed to timely file constitutionally required anti-bribery oath). Conversely, the failure to meet other constitutional provisions renders a judge's actions void, which can be raised for the first time on appeal. *See Fry v. Tucker*, 202 S.W.2d 218, 222 (1947) (stating that disqualification could be raised in subsequent proceeding for claim trial judge was related to one of the litigants as described in § 11, Article V of the Texas Constitution). We have found no cases under the emolument clause that decide if it is a fundamental non-waivable error.

Texas Constitution art. 16, § 1. *Prieto Bail Bonds v. State*, 994 S.W.2d 316, 320 (Tex. App.—El Paso 1999, pet. ref'd). It follows then, according to Belew, that Judge Harle is a senior judge assigned to this cause and is holding an office as such, in addition to his duties as presiding judge of an administrative district. *Prieto*, however, does not hold that a senior judge actually "holds an office." To the contrary, in the very passage cited by Belew, *Prieto* explains that senior judges "hold no true permanent office and are merely assigned to various courts from time to time." 994 S.W.2d at 321.

No case cited by Belew—and no case that we have found—holds that an "office" which is not a "true permanent office" counts as an office for purposes of the emolument clause in Texas Constitution art. XVI, § 40. Several cases suggest the opposite. *See, e.g., Employees Ret. Sys. of Tex. v. Lowy*, 635 S.W.3d 250, 256 (Tex. App.—Austin 2021, no pet.) ("[T]he constitutional and statutory language that governs the court system as a whole and the assignment of former and retired judges in particular indicates that a former or retired judge assigned to the bench, although he is a judicial officer and may exercise the powers of the office. . . , does not *hold* the judicial office to which he is temporarily assigned.") (emphasis in original); *Hennington v. State*, 144 S.W.3d 42, 45 (Tex. App.—Eastland 2004, pet. ref'd) ("[A] senior judge sitting by assignment is neither an appointed officer nor an officer occupying a new office."); *Delamora v. State*, 128 S.W.3d 344, 358–59 (Tex. App.—Austin 2004, pet. ref'd) ("If a retired senior judge opts to retain his judicial capacity as permitted by law and accepts temporary assignments from time to time to different courts, what appointed de jure office does he or she hold? Who is the appointing authority? What is the term of such office? How often must the constitutional oaths be taken. . .

11

?").[6]

Although mentioned by neither party, *Eucaline Med. Co. v. Standard Inv. Co.* squarely addressed this issue, holding: "Nor is the position of presiding judge of the administrative district an office that a regularly elected district judge is forbidden by the Constitution to hold and exercise"; "We . . . overrule the contention . . . that the position of presiding judge of these districts is an office within the meaning of section 40, art. 16, of the Constitution." *Eucaline Med. Co. v. Standard Inv. Co.*, 25 S.W.2d 259, 261–62 (Tex. App.—Dallas 1930, writ ref'd). While *Eucaline* examined the constitutional propriety of serving as both presiding administrative judge and elected district judge, rather than presiding judge and senior judge, we see no meaningful distinction between the two. *See Olivares v. State*, 693 S.W.2d 486, 489 (Tex. App.—San Antonio 1985, writ dism'd) (per curiam) ("A retired district judge who elects to continue in his judicial capacity [i.e., a senior judge] is not a 'special' judge, but is still a district judge"). Thus, *Prieto, Lowy*, *Hennington*, and *Delamora* cast doubt on whether a senior judge holds an office for purposes of art. XVI, § 40, and *Eucaline* definitively holds that a presiding administrative judge does not. *See also Tivoli Corp. v. Jewelers Mut. Ins. Co.*, 932 S.W.2d 704, 708 (Tex. App.—San Antonio 1996, writ denied) (citing *Eucaline* approvingly).

We overrule Belew's sixth issue. With our own jurisdiction firmly intact, we turn to the summary judgment, and begin with the evidentiary objections.

---

[6] We note that if serving as both presiding and senior judge is constitutionally prohibited, then § 74.045 of the Texas Court Administration Act would similarly be called into question. *See* TEX. GOV'T CODE ANN. § 74.045 ("Qualifications of Presiding Judge. (a) A presiding judge must be at the time of appointment: (1) a regularly elected or retired district judge; (2) a former judge with at least 12 years of service as a district judge; or (3) a retired appellate judge with judicial experience on a district court."). And for that matter, § 74.054(5) that allows a presiding judge to appoint "an active judge or justice of the supreme court, the court of criminal appeals, or a court of appeals who has had trial court experience" would inherently create emolument problems unless those appointees resigned their other judicial post. *Id*. § 74.054(5).

## B. Belew's Objections to the State's Summary Judgment Exhibits

Belew objected to two documents from the Tarrant County court records that the State relied on: the Waiver of Appeal and the 1973 Judgment.

We review evidentiary rulings in connection with a summary judgment motion under the abuse of discretion standard. *See Starwood Mgmt. LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam). And our review of that discretion turns on whether the trial court acted "without reference to any guiding rules and principles." *Id.* (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

Belew objected to the Waiver of Appeal because it contains a legal conclusion, namely Belew's statement that he was "convicted" of burglary. Belew cites no authority that a party's admission to a prior conviction is conclusory. Further, the Waiver of Appeal was signed by Belew in a criminal proceeding at which he undisputedly pled guilty and received a probated sentence for the offense of burglary.[7] Viewing the Waiver of Appeal in the context of the other documents in the file, we cannot agree that it was conclusory. And a party's admission to a prior conviction may be used to prove the conviction. *Ex parte Rodgers*, 598 S.W.3d 262, 270 (Tex. Crim. App. 2020) ("A defendant may be linked to prior convictions through his own admission.") (citing *Flowers v. State*, 220 S.W.3d 919, 921–22 (Tex. Crim. App. 2007)). We conclude that the trial court did not abuse its discretion in overruling Belew's objections to the Waiver of Appeal.

Belew also objected that the 1973 Judgment is hearsay and lacks proper authentication. More specifically, Belew objected that under Texas Rules of Evidence 803(8) (exception to hearsay for public records) and 902(4) (self-authentication of public records), the 1973 Judgment

---

[7] The indictment recites that on or about February 27, 1973, Belew did unlawfully break and enter a house without the owner's consent, with the intent to fraudulently take, steal, and carry away corporeal personal property, and the intent to deprive the owner of such property and to appropriate the property to his own use and benefit.

lacks trustworthiness because it (1) was not "file-marked" and "entered of record"; (2) the clerk failed to note delivery of the order on the docket; and (3) a complete copy was not provided. Belew cites no direct authority holding that a court record must be ruled inadmissible for any of these reasons.

Whether a court record is admissible, as well as whether it has been "entered of record," does depend not on whether it is file-marked but on whether it contains a proper certificate by the clerk of the court. *Gutierrez v. State*, 456 S.W.2d 84, 86 (Tex. Crim. App. 1970) ("The certificate of the district clerk . . . showed that they were true copies . . . . Trevino testified that she was a deputy district clerk . . . and that such judgments and sentences were true and correct copies . . . . This is sufficient to show that the judgments and sentences were entered of record."). Belew acknowledges that the 1973 Judgment bears "a seal indicating that it is a certified copy." His other complaint is that the last line on the one page 1973 Judgment ends in a semi-colon, not a period, which he suggests means there is a missing second page. The section with the ending semi-colon—his terms of probation—is lifted directly from another document and similarly ends with a semi-colon. We cannot say the trial court abused its discretion in failing to ascribe significance to this aspect of the document, such that it must be excluded.

We conclude that the trial court did not abuse its discretion in overruling Belew's objections to the 1973 Judgment. We overrule issues four and five.

### C. Whether the burden of proof is clear and convincing evidence

In his first issue, Belew argues that the trial court should have declared that the burden of proof in a quo warranto proceeding is clear and convincing evidence. According to Belew, that declaration is mandated by the doctrine of constitutional avoidance, which requires courts to interpret ambiguous statutory language to avoid constitutional tension where possible. The quo

warranto statute does not specify an applicable standard of proof. Construing the statute to implicate a preponderance of the evidence standard, Belew contends, would create constitutional tension with *Santosky v. Kramer*, 455 U.S. 745 (1982). Under *Santosky*, due process requires the government to prove its claims by clear and convincing evidence when those claims threaten "a significant deprivation of liberty" or "stigma." 455 U.S. at 756. Belew argues a quo warranto proceeding fits this category because running for and holding elected office are fundamental rights intertwined with the right to vote, implicating both the First and Fourteenth Amendments of the U.S. Constitution. The Kansas Supreme Court adopted this rationale in *State ex rel. Tomasic v. Cahill*, 567 P.2d 1329, 1334 (Kan. 1977), and the Supreme Court of Texas once held that clear and convincing evidence is required in a suit to remove an elected district judge. *In re Laughlin*, 265 S.W.2d 805, 809 (Tex. 1954).[8]

As interesting as the argument may be, we have no need to reach it. This case comes to us from competing traditional motions for summary judgment. The standard for a traditional motion for summary judgment is set by Rule 166a and is likely stricter than clear and convincing evidence. A movant must conclusively show that there is no genuine issue of material fact. *See* TEX. R. CIV. P. 166a(c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986) ("To be entitled to summary judgment, the movant must conclusively prove all essential elements of his claim."). If they do so, the non-movant must prove that there is more than a scintilla of evidence to create a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Preponderance-of-the-evidence and clear-and-convincing-evidence standards simply do not exist in this realm.[9]

---

[8] But as Former Chief Justice Barajas from this Court noted, the constitutional underpinnings of *In re Laughlin* were superseded by constitutional amendment, and the standard for removal of a judge is now preponderance of the evidence. *See In re Canales*, 113 S.W.3d 56, 67 (Tex. Rev. Trib. 2003, pet. denied).

[9] The cases that Belew cites in support of his clear-and-convincing-evidence standard all involved matters decided by

*See Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003) (declining to adopt the clear-and-convincing standard for summary judgment purposes, "because its application would suggest that the trial court must weigh the evidence") (quotation marks and brackets omitted). For that matter, Belew never asked the trial court to employ a clear-and-convincing-evidence standard in its summary judgment determination.

Given the procedural posture of this case (appeal of a granted summary judgment), any declaration of the standard of proof for any eventual fact-finder would be advisory, and thus improper. *Tex. Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet. denied) ("A declaratory judgment action does not vest a court with the power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication.") (citations omitted).

Belew's first issue is overruled without reference to its merits.

### D. Whether Belew conclusively disproved the alleged 1973 conviction

The State moved for summary judgment claiming it conclusively established that Belew had been convicted of a felony. Belew moved for summary judgment claiming he conclusively established the converse. He used the same arguments and proofs from his own motion to respond to the State's motion. We consider both motions together as they are two sides of the same coin.

We review a trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). A traditional motion for summary judgment requires the moving party

---

triers of fact. *See State ex rel. Tomasic v. Cahill*, 567 P.2d 1329, 1330–31 (Kan. 1977) (decision by three judge pane)l; *In re Laughlin*, 265 S.W.2d 805, 809 (Tex. 1954) (finding by special master after taking evidence); *In re C.H.*, 89 S.W.3d 17, 19 (Tex. 2002) (jury findings challenged); *In re G.M.*, 596 S.W.2d 846 (Tex. 1980) (bench trial findings challenged); *State v. Addington*, 588 S.W.2d 569, 569 (Tex. 1979) (per curiam) (jury findings challenged).

to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Centeq Realty*, 899 S.W.2d at 197. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Knott*, 128 S.W.3d at 215; *see Fraley v. Tex. A & M Univ. Sys.*, 664 S.W.3d 91, 97 (Tex. 2023).

When parties bring cross-motions for summary judgment, each party has the burden to establish their entitlement to judgment as a matter of law. *Miles v. Texas Cent. R.R. & Infr. Inc.*, 647 S.W.3d 613, 619 (Tex. 2022). When one party's motion is granted and the other is denied, we "determine all questions presented and render the judgment that the trial court should have rendered." *Id.* (quotation marks omitted).

To prevail on its traditional motion for summary judgment, the State was required to conclusively show that, as a matter of law, Belew was disqualified from holding elected office by having been convicted of a felony. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986) (per curiam). Under § 141.001(a)(4) of the Texas Election Code, to be eligible for elected office, a person must "have not been finally convicted of a felony." TEX. ELEC. CODE ANN. § 141.001(a)(4). To show that Belew was convicted, the State first points to documents from Belew's 1973 criminal case file, including the 1973 Judgment and Waiver of Appeal. The 1973 Judgment states that it is a "[j]udgment of conviction" of a felony, and the Waiver of Appeal states that Belew was "convicted of the offense of burglary," which Belew does not dispute is a felony.

What Belew does dispute and what he claims raises a genuine issue of material fact are (1) the judgment of conviction is not signed, (2) the judgment of conviction has no filed stamp, and

17

(3) his claim that the conviction was part of a program that works like deferred adjudication (the successful completion of which negates any actual conviction). We take each of those arguments in turn.

### E. Does the Judgment of Conviction Need to be Signed?

As a prelude to his arguments attacking the documents used by the State, Belew posits that because this case involves fundamental rights, the statutory language must be strictly construed against ineligibility. He reasons that the word conviction in § 141.001(a)(4) should be assigned a more technical meaning. At the heart of his argument is *Eckels v. Gist*, which in the context of a quo warranto proceeding, held that "the word 'conviction' has acquired a technical meaning,"—"[t]he technical meaning of the word 'conviction' requires a judgment." *Eckels v. Gist*, 743 S.W.2d 330, 331 (Tex. App.—Houston [1st Dist.] 1987, no writ). For this proposition, *Eckels* cites *McNew v. State*, which observed that "a 'conviction,' regardless of the context in which it is used, always involves an adjudication of guilt." *McNew v. State*, 608 S.W.2d 166, 172 (Tex. Crim. App. 1978).

But Belew does not argue that no adjudication of guilt occurred in his 1973 criminal case. That is, rather than focus on "judgment" as an *event*, he focuses on "judgment" as a *document*, pointing to *Eckels*' concluding restated holding:

> We hold that the word "conviction" as used in Tex. Local Gov't Code section 87.031(a) requires a judgment. A "judgment" is the written declaration of the court signed by the trial judge and entered of record, showing among other things the conviction or acquittal of the defendant. *See, e.g.* Tex. Code Crim. P. Ann. art. 42.01 (Vernon Supp.1987).

743 S.W.2d at 332. From this, Belew concludes that because "[t]he State does not dispute that the [1973 Judgment] is not a written declaration of the court, signed by the trial judge, and entered of record," the 1973 Judgment thus "fails to meet the strict application against ineligibility under *Eckels v. Gist* as a matter of law."

18

As always, context matters. *Eckels* did not involve an irregular document, but an irregular event—the office holder was prematurely removed from office. The trial judge in *Eckels* entered an order removing the public official from office after a jury's guilty verdict, but before a judgment of guilty was entered. *See* 743 S.W.2d at 330. The issue was not a defect in the judgment, but its timing. Likewise, each of the cases cited by *Eckels* in support of its restated holding involve an irregular event (premature removal) rather than an irregular document.[10] Accordingly, because *Eckels* and its underlying authorities involve irregular events and not irregular documents, any statement by *Eckels* regarding what might constitute an irregular or defective document is dicta.

Further, even had *Eckels* ventured such an opinion, its definition of "judgment" as "the written declaration of the court signed by the trial judge and entered of record" directly quotes the current version of Texas Code of Criminal Procedure art. 42.01. But as the State points out, the version of art. 42.01 effective in 1973 did not require a judgment to be signed.[11] And caselaw expressly held that pre-1973 judgements were not required to be signed. *See Campbell v. State*, 502 S.W.2d 736, 737 (Tex. Crim. App. 1973) ("Article 42.01 . . . does not require the judge's signature on the judgment. The fact that the prior judgment and sentence were not signed by the judge does not affect the validity of the former conviction."). Belew seeks to distinguish those cases because they involve use of a prior judgment entered in the same trial court. But this is true

---

[10] *See Kitsap Cnty. Repub. Cent. Comm. v. Huff*, 620 P.2d 986, 987 (1980) (en banc) ("The question to be decided . . . is whether Walgren has been 'convicted' when a jury verdict has been returned against him, but the trial court's action on post-verdict motions and entry of judgment remain."); *Slawik v. Folsom*, 410 A.2d 512, 518 (Del. 1979) ("[R]emoval of the plaintiff [from office] was invalid and ineffective . . . until the date of the sentence imposed . . . .On the latter date, the plaintiff stood 'convicted'"); *Helena Rubenstein Internat. v. Younger*, 139 Cal. Rptr. 473, 476 (Ct. App. 1977) ("The sole substantive issue presented here is whether Reinecke was 'convicted' . . . for the purpose of exclusion from holding public office upon the rendition of the jury verdict . . . ,or the judgment."); *Grogan v. Lisinski*, 446 N.E.2d 1251, 1252 (1983) ("The question presented . . . is whether a finding of guilty without an imposition of sentence constitutes a 'conviction' for purposes of ouster from an elective office.").

[11] *Cf.* Act of May 27, 1965, 59th Leg., RS. ch. 722, § 42.01 Tex. Gen. Laws 484 (no signature requirement) with Act of May 31, 1981, 67th Leg., R.S. ch. 291 §110, 1981 Tex. Gen. Laws 809 (first time adding signature requirement).

only of *Campbell*. *See Id*. (same court). Other decisions are not limited to judgments from the same court. *See Rose v. State*, 470 S.W.2d 198, 200 (Tex. Crim. App. 1971) (not same court); *Emerson v. State*, 476 S.W.2d 686, 688 (Tex. Crim. App. 1972) (no indication same court); *Jones v. State*, 449 S.W.2d 277 (Tex. Crim. App. 1970) (not same court); *McGowen v. State*, 290 S.W.2d 521, 524 (Tex. Crim. App. 1956) (not same court) ("[F]ailure of the judge to sign the judgment, sentence or minutes of the court did not affect their validity.").

Belew further seeks to distinguish this line of cases claiming the standard applied to a punishment phase of a criminal case relating to signatures should not apply in a removal proceeding. But Belew fails to explain why, other than to emphasize the fundamental nature of public offices and voter choice of candidates. Yet the admission of evidence in criminal cases implicates equally weighty fundamental rights. We conclude that *Eckels* does not compel a finding that the lack of the judge's signature shows Belew was not convicted of a felony in 1973.

## F. Does the Judgment of Conviction Require a File Stamp?

Belew also argues that no conviction can be proven because the 1973 Judgment bears no file stamp, thus was never "entered of record," citing *Chambers v. State*, 654 S.W.3d 593, 598 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd); *State v. Dotson*, 224 S.W.3d 199, 204 (Tex. Crim. App. 2007); and *Ex parte Gnesoulis*, 525 S.W.2d 205, 208–209 (Tex. App.—Houston [14th Dist.] 1975, no writ). But none of these cases prove that point. *Chambers* merely held that a file-stamp is "a reasonable indication of [an undated written opinion's] date of signing," 654 S.W.3d at 598. *Dotso*n merely held that a file-stamp is "strong evidence" that an indictment met its "presentment" requirement, 224 S.W.3d at 204. *Ex Parte Gnesoulis* merely held that an unstamped judge's letter to both sides' counsel was not a judgment where it was "obvious from the very general terms of the [letter's] provisions, including the fact that it d[id] not specify which

20

party was to be granted the divorce, that the trial judge intended this letter to be no more than a guideline upon which the attorneys for both parties were to draw up and submit their proposed judgments." 525 S.W.2d at 209. That is, none of these cases suggest that if a judgment of conviction bears no file-stamp, no conviction occurred as a matter of law.

Further, in *Gutierrez v. State*, the Texas Court of Criminal Appeals rejects Belew's argument about what it means to be "entered of record":

> The certificate of the district clerk of Hidalgo County attached to the indictment, judgment and sentence in each of the two cases showed that they were true copies as they appeared on file in the clerk's office. Lucille Trevino testified that she was a deputy district clerk of Hidalgo County and that such judgments and sentences were true and correct copies of the records of the office. This is sufficient to show that the judgments and sentences were entered of record.

456 S.W.2d 84, 86 (Tex. Crim. App. 1970).

Belew further argues that the 1973 judgment was not "entered of record" because it orders two actions to be taken by the clerk after entry: (1) furnish a certified copy to the defendant; and (2) note on the docket sheet the date of delivery. But even assuming neither event occurred, Belew cites no authority that the result would negate his conviction, and we cannot see how failure to take a required post-entry action would undo the entry.

Finally, Belew argues that the State cannot rely on docket entries to claim a judgment was entered of record, citing *Moore v. State*, 245 S.W.2d 491 (Tex. Crim. App. 1952) and *Ellis v. State*, 145 S.W.2d 176, 177 (Tex. Crim. App. 1940). However, unlike in these cases, the State does not seek to establish the existence of a conviction based solely on a docket entry. Rather it relies on all the documents in the 1973 criminal case, including the 1973 Judgment. For instance, there is no dispute that Belew was placed on probation and "[t]he judge or jury may grant probation only after conviction." *Nealy v.* State, 500 S.W.2d 122, 125 (Tex. Crim. App. 1973).

21

## G. Was this Conviction an Early Form of Deferred Adjudication?

Under present day law, the Code of Criminal Procedure grants a trial court the authority, subject to important limitations, for at least two non-prison alternatives for punishment following a finding of guilt. A trial court might place a defendant on community supervision under TEX. CODE CRIM. PROC. ANN. art. 42A.053 (sometimes shorthanded as "straight probation"). Another non-prison alternative is deferred adjudication community supervision under TEX. CODE CRIM. PROC. ANN. art. 42A.102 (or simply "deferred"). The distinction is important here because for straight probation, the person carries the conviction with them for life, unless they are pardoned[12] or obtain judicial clemency.[13] But a person who successfully completes deferred adjudication does not actually have a conviction on their record, because the court literally "deferred" any finding of guilt, thus by definition that person would not be precluded from office because of a conviction. *See McNew v. State*, 608 S.W.2d 166, 172 (Tex. Crim. App. [Panel Op.] 1978) (finding that because deferred adjudication does not involve an adjudication of guilt, it is not a conviction). Conversely, a person who completes straight probation is precluded from public office. *Welch v. State ex rel. Long*, 880 S.W.2d 79, 81 (Tex. App.—Tyler 1994, writ denied) ("The 'finality' of . . . a conviction, in th[e] context [of removing an elected official from office], has nothing to do with whether the punishment assessed is suspended or probation granted. Plainly, in this context, an adjudication of guilt is disqualifying, even if probation was granted."); Tex. Att'y Gen. Op. KP-0251 (2019) (and authorities cited there).

---

[12] TEX. CODE CRIM. PROC. ANN. ART. 48.01(a) (describing pardon process).

[13] Judicial clemency is governed by TEX. CODE CRIM. PROC. ANN. art. 42A.701(f) ("If the judge discharges the defendant under this article, the judge may set aside the verdict or permit the defendant to withdraw the defendant's plea. A judge acting under this subsection shall dismiss the accusation, complaint, information, or indictment against the defendant."). Subject to some exceptions, "[a] defendant who receives a discharge and dismissal under this subsection is released from all penalties and disabilities resulting from the offense of which the defendant has been convicted or to which the defendant has pleaded guilty[.]" *Id.*

All of which brings us to the hardest question in this case: did Belew raise more than a scintilla of evidence that he was given a variant of deferred adjudication in 1973? We say a variant, because deferred adjudication as we know it today did not come into existence until the predecessor to Article 42A.102 was passed in 1975. *See* Act of May 7, 1975, 64th Legis., R.S., ch. 231, § 1, 1975 Tex. Gen. Laws 572. Belew urges that Tarrant County had its own form of deferred adjudication which is what he pleaded to in 1973.

Accepting the evidence in the light most favorable to Belew, we could agree that Tarrant County in 1973 had a program that allowed youthful offenders to enter a "memorandum of agreement" that would act as deferred adjudication does today. It applied to "predominantly young or first time offenders[.]"And Belew's attorney told Belew that the outcome of Belew's case would mirror what would be the outcome of deferred adjudication. But the evidence ends there. Nothing in the record shows, for instance, that the guilty plea paperwork here is what was used for memorandum agreements. Nothing in the documents uses the term memorandum agreement. Nothing in attorney Loftin's affidavit details the "memorandum of agreement" process, the steps involved in or out of the courtroom, or the contents of any documents that would have been used. And Loftin affirmatively states he "ha[s] no idea of this happened for Mr. Belew or not."

Nor does Belew's affidavit change the calculus. The affidavit does not state that his 1973 criminal case was processed under a "memorandum of agreement." Instead, the affidavit states only that *his attorney advised him* that "in exchange for a plea of guilty to one of the offenses and upon [his] completion of ten years of supervision the charges would be dismissed and not result in a felony conviction," and that *his attorney's advice* "that should [he] complete probation [he] would not have a felony conviction was assurance enough to [him] that this was in fact accurate."

While in a summary judgment case we consider the evidence in the light most favorable to

23

the non-movant, we do not consider that evidence in isolation. Rather, as the San Antonio Court of Appeals explains:

> [A]n appellate court reviewing a summary judgment . . . is to consider all of the summary judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. And, while the court indulges every reasonable inference and resolves any doubts against the movant, if the summary judgment evidence allows of only one reasonable inference, the court may not disregard it.

*Townsend v. Hindes*, 619 S.W.3d 763, 770 (Tex. App.—San Antonio 2020, no pet.) (citation omitted). Here, reasonable jurors could not ignore the 1973 Judgment, which unambiguously characterizes itself as a "[j]udgment of conviction," nor the Waiver of Appeal, which unambiguously states that Belew was "convicted of the offense of burglary." Further, aside from lodging objections that we agree could be overruled, Belew neither challenges the force and effect of the 1973 Judgment, nor disputes having signed, along with his attorney, the Waiver of Appeal. As a result, the summary judgment record allows for only one reasonable inference: the documents in the 1973 criminal case file establish that Belew was convicted of a felony, and if Belew was given legal advice otherwise, that advice was incorrect.

Because the documents in the 1973 criminal case file, including the 1973 Judgment and the Waiver of Appeal, conclusively show that Belew was convicted of a felony, and because Belew has failed to raise a genuine issue of material fact, we conclude that the trial court did not err in granting the State's motion for summary judgment.

## CONCLUSION

In summary, we overrule Belew's sixth issue that contends the judgment below is void. We overrule his first issue without reference to its merits. We overrule his second and third issue complaining of the trial court's ruling on the competing summary judgments. We also overrule his

24

fourth and fifth issues raising evidentiary challenges. Belew's pending Motion to Suspend Enforcement of the Judgment is denied a moot. We affirm the judgment below.


                                    JEFF ALLEY, Chief Justice

March 15, 2024

Before Alley, C.J., Palafox and Soto, JJ.